UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| FARIS ABD AL-ALI, )<br>)<br>      Petitioner, )<br>)<br>v. )<br>)<br>STEPHEN DOTSON, WARDEN, )<br>)<br>      Respondent. ) | No. 3:07-1086<br>Judge Brown |

**To: The Honorable Robert L. Echols, United States District Judge**

## REPORT AND RECOMMENDATION

For the reasons explained below, the undersigned **RECOMMENDS** that the respondent's motion to dismiss (Docket Entry No. 14) be **GRANTED**, that the petition (Docket Entry No. 1) be **DENIED**, that this action be **DISMISSED** with prejudice, and that any appeal **NOT** be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

## I. INTRODUCTION AND BACKGROUND

The petitioner was indicted in Rutherford County on August 25, 2001 on one count of child rape in violation of Tenn. Code Ann. § 39-13-522. (Add. 1, p. 2)[1] He was convicted by a jury on October 2, 2002, and sentenced to twenty-two (22) years in the Tennessee Department of Correction. (Add. 1, p. 31) The petitioner appealed. (Add. 1, p. 36)

The petitioner raised two claims on direct appeal: 1) the trial court erred in not suppressing the statement that he made to law enforcement officials (Add. 17, pp. 32-34); and 2) the prosecutions' failure to elect a particular offense constituted plain error (Add. 17, pp. 35-37). The

---

[1] The addenda referred to herein were filed as part of Docket Entry No. 17.

Tennessee Court of Criminal Appeals (Court of Criminal Appeals) affirmed the judgment of the trial court on April 16, 2004. (Add. 19) Although the petitioner asserts on one hand that he sought permission to appeal in the Tennessee Supreme Court (Add. 20, ¶ 10(b), p. 3), it appears from the record that he actually did not (Docket Entry No. 1, ¶ 18; Add. 21, p. 110).

The petitioner filed a petition for post-conviction relief on August 24, 2004, and an amended petition on April 15, 2005 (Add. 20, pp. 2-9, 14-17), in which he raised the following claims:

1) Ineffective assistance of counsel for failure to prepare/investigate adequately, (Add. 20, ¶ 1, p. 6);

2) Trial court error in considering mitigating factors (Add. 20, ¶ 2, p. 6);

3) Trial court error in imposing an excessive sentence (Add. 20, ¶ 3, p. 6);

4) Trial court error in admitting his statements to law enforcement officials into evidence in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments (Add. 20, ¶ 4, p., 6);

5) Failure to elect a particular offense in violation of his rights under the Sixth and Fourteenth Amendments (Add. 20, ¶ 5, p. 7);

6) Ineffective assistance of counsel for failure to object or otherwise attempt to prevent the trial court from instructing the jury that the petitioner was in Iraqi national (Add. 20, ¶ 3.a, pp. 14-15);

7) Denial of his right to a fair and impartial jury in violation of his rights under the Sixth and Fourteenth Amendments when the trial court instructed the Jury that the petitioner was an Iraqi (Add. 20, ¶ 3.b, p. 15);

8) Ineffective assistance of counsel under the Sixth and Fourteenth Amendments for failure to file a supplemental brief, or to seek permission to do so, challenging the petitioner's enhanced sentence under

2

>           *Blakely v. Washington*, 542 U.S. 296 (2004) (Add. 20,
>           ¶ 3.c, pp. 15-16); and
>
>   9)    Trial court error under *Blakely* in enhancing the
>         petitioner's sentence in violation of the Sixth and
>         Fourteenth Amendments (Add. 20, ¶ 3.d, p. 16).

Following an evidentiary hearing, the post-conviction court denied the petitioner's request for post-conviction relief on December 1, 2005. (Add. 20, pp. 21-23; Add. 21, p. 132)

The petitioner filed a notice of appeal on January 3, 2006 (Docket Entry No. 20, p. 24), raising the following claims on appeal from the judgment of the post-conviction court:

>   1)    The trial court erred in dismissing his claim that
>         defense counsel was ineffective because he did not
>         adequately inquire into whether the petitioner
>         knowingly and voluntarily waived his right against
>         self-incrimination (Add. 26, ¶ II, pp. 10-11);
>
>   2)    The trial court erred in dismissing his claim that he
>         was denied his right to an impartial jury when the
>         jury was instructed that the petitioner was in Iraqi,
>         and defense counsel's failure to object to the
>         instruction (Add. 26, ¶ III, p. 11); and
>
>   3)    The trial court erred in dismissing his petition based
>         on alleged cumulative defense counsel error (Add. 26,
>         ¶ IV, pp. 11-12).

The Court of Criminal Appeals affirmed the judgment of the post-conviction court on December 13, 2006, following which the Tennessee Supreme Court denied his application for permission to appeal on April 23, 2007. (Docket Entry No. 1, ¶ 27; Add. 28, p. 1) The petitioner did not file a petition for a writ of *certiorari* in the United States Supreme Court (the Supreme Court).

The petitioner brought this action in the United States District Court for the Western District of Tennessee on October 22, 2007. (Docket Entry No. 1) The petitioner raises the following grounds for relief in his petition:

1) GROUND A – Defense counsel was ineffective in not calling alibi witnesses in violation of his rights under the Sixth Amendment (Docket Entry No. 1, Attach. Memo., pp. 3-11)[2]; and

2) GROUND B – His conviction was obtained in violation of his Fifth Amendment right against self-incrimination (Docket Entry No. 1, Attach. Memo., pp. 11-19)

This action was transferred to the Middle District on November 1, 2007. (Docket Entry No. 4)

The respondent filed a motion to dismiss, and a memorandum in support of that motion, on April 9, 2008. (Docket Entry No. 14-15) On April 15, 2008, this case was referred to the Magistrate Judge "for further proceedings" under Rule 8(b), Rules – Section 2254 Cases, 28 U.S.C. § 636(b)(1)(B), and Rule 7, Local Rules for Magistrate Judges. (Docket Entry No. 16) The petitioner has not responded to the motion to dismiss, and the time frame for him to do so under the local rules of court has run. LR7.01(b), Local Rules of Court.

## II. ANALYSIS

Petitions for federal *habeas corpus* relief filed after April 24, 1996 are subject to the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). *See Martin v. Mitchell*, 280 F.3d 594, 602 (6th Cir. 2002)(citing *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1977). Title 28 U.S.C. § 2254, as amended by the AEDPA, provides the following with respect to granting a writ of *habeas corpus* to prisoners who are in custody pursuant to a state court judgment:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim

---

[2] The petitioner did not number the pages in his Memorandum in support of his petition. The page numbers referred to herein are those assigned by CM/ECF.

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The "unreasonable application" of clearly established federal law differs from an "incorrect application." *Williams v. Taylor*, 529 U.S. 362, 365 (2000). Under the former, "a federal *habeas corpus* court may grant relief if the state court identifies the governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. The latter clause is satisfied when a state court "arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or . . . decides a case differently than the Court . . . on a set of materially indistinguishable facts." *Id*. at 364-65. Where state courts have made factual determinations regarding issues presented for federal *habeas corpus* review, such determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Miller-el v. Cockrell*, 537 U.S. 322, 324 (2003). Finally, under the AEDPA, the purpose of federal *habeas corpus* review is to "ensure that state court convictions are given effect to the extent possible under the law," not to conduct a federal re-trial. *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### A. Petitioner's Ineffective Assistance Claims

#### 1. Failure to Call Alibi Witnesses

The crux of this claim – petitioner's Ground A – is that defense counsel was ineffective for not calling alibi witnesses on his behalf. (Docket Entry No. 1, Attach. Memo. pp. 3-11) The respondent argues that this ineffective assistance claim is procedurally defaulted for purposes of

5

federal *habeas corpus* review. (Docket Entry No. 15, pp. 8-10)

The AEDPA places notable restrictions on a federal court's ability to grant *habeas corpus* relief to state prisoners. First, federal *habeas corpus* courts may only consider claims that a *habeas* petitioner has previously raised before the state courts. *See* 28 U.S.C. § 2254(b); *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002). Claims that have not been raised in state court are deemed unexhausted and are ordinary dismissed, without prejudice, so that the *habeas* petitioner may pursue them in state court. *Alley*, 307 F.3d at 385 (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). However, if the petitioner is barred from raising an unexhausted claim in state court due to a state procedural rule, then that claim is procedurally defaulted for purposes of federal *habeas corpus* review. *See Coleman v. Thompson*, 501 U.S. 722, 752-753 (1991). A claim also is procedurally defaulted where that claim was presented to the state court, but the court, rather than reaching the merits of the claim, relied on an independent and adequate state ground, such as a state procedural rule barring review of the claim, in deciding the issue. *Id.* at 734-735.

As shown, *supra* at pp. 2-3, the petitioner did not raise this claim at any time during the state court proceedings in his case. Moreover, the only witness-related testimony at the post-conviction evidentiary hearing pertained to the petitioner's common-law wife, Lisa Lantz, and a Smyrna detective named Jeff Peach who, with another detective named John Liehr, escorted the petitioner from Detroit to Smyrna. (Add. 21, pp. 12-18) When asked specifically whether there were "any other witnesses that [defense counsel] failed to call that [he] fe[lt] sould have been beneficial to [his] case," the petitioner responded through his interpreter, "I can't think of any except these two." (Add. 21, p. 18) The issue of alibi witnesses was not raised even tangentially in either his initial or amended petition, during testimony at the post-conviction evidentiary hearing, or on appeal from the judgment of the post-conviction court. Therefore, this claim is unexhausted. The next question

6

is whether this claim is procedurally defaulted under state law.

Tennessee's post-conviction statute in effect at the time the petitioner filed his post-conviction petition, Tenn. Code Ann. § 40-30-102, provides that a state prisoner must file a petition for post-conviction relief within one year of the date that his conviction becomes final on direct appeal, and that he may not file more than one petition. *Id*. at §§ (a), (c). A petitioner may, however, move to reopen a post-conviction proceeding that has been concluded if the motion is based on: 1) a final ruling of an appellate court establishing a new constitutional right that was not recognized at the time of trial; 2) new scientific evidence that establishes the petitioner actually is innocent; 3) a sentence that was enhanced because of a previous conviction that was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid; and 4) the facts underlying the claim, if true, provide clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced. Tenn. Code Ann. §§ 40-30-117(a)(1)-(a)(4).

Because the petitioner has filed one post-conviction petition, he may not file another. Moreover, none of the "limited circumstances" provided in §§ 40-30-117(a)(1)-(a)(4) apply to the petitioner's remaining claims. Therefore, the motion-to-reopen provision in § 40-30-102(c) is inapplicable. For these reasons, the petitioner's ineffective assistance claim based on the alleged failure to call alibi witnesses is procedurally defaulted under state law. The next question is whether it is procedurally defaulted for purposes of federal *habeas corpus* review.

If a claim is procedurally defaulted under state law, then federal *habeas corpus* review is prohibited unless the petitioner demonstrates both "cause" and "prejudice" for his failure to raise the claim in state court while state court remedies were available, or that a miscarriage of justice will result if the claim is not reviewed. *Alley*, 307 F.3d at 386; *Seymour v. Walker*, 224 F.3d 542, 550

7

(6th Cir. 2000). To establish "cause," a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel, or that 'some interference by officials' made compliance impracticable," constitutes "cause" under this standard. *Murray*, 477 U.S. at 488 (citations omitted); *see also Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002)("Cause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel."). To show "prejudice," default of the claim must not merely have created a possibility of prejudice to the defendant, but it must have "worked to his actual and substantial disadvantage, infecting his entire trial with errors of constitutional dimensions." *Jamison*, 291 F.3d at 388 (citing *United States v. Frady*, 456 U.S. 152, 170-171 (1982)). Finally, to demonstrate a "fundamental miscarriage of justice," a petitioner must show that the alleged constitutional violation probably resulted in the conviction of one who actually is innocent. *Murray*, 477 U.S. at 496. This exception applies only in "extraordinary cases," *Id*., and requires a petitioner to show that he is "actually innocent," *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

The petitioner has made no effort to establish cause and prejudice, nor does he argue that a fundamental miscarriage of justice will occur if the court does not review this claim. As previously noted, *supra* at p. 4, the petitioner did not file a response to the respondent's motion to dismiss. Consequently, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.

### Certificate of Appealability

Where a district court denies claims in a *habeas corpus* petition on procedural grounds without reaching the merits of the petitioner's underlying constitutional claims, a certificate of appealability will issue only if the petitioner can show: 1) that jurists of reason would find it

8

debatable whether the petition states a valid claim of the denial of a constitutional right; and 2), that jurists of reason would find it debatable whether the procedural ruling was correct. *Slack*, 529 U.S. at 484. Because jurists of reason would not disagree with the determination that this claim is procedurally defaulted for purposes of federal *habeas corpus* review, a COA should not issue on this claim.

### 2. Cumulative Defense Counsel Error and Lack of Adequate
### Adequate Preparation/Investigation

Although unclear from the pleadings, it appears that the petitioner may have intended to raise his alibi-witness claim in the context of cumulative defense counsel error and failure to prepare/ investigate adequately. (Docket Entry No. 1, Attach. Memo., pp. 9-10) The respondent did not address these two claims, no doubt due to the ambiguity of the pleadings. Nevertheless, the undersigned will address these two claims *sua sponte* for the sake of completeness.

#### a. Cumulative Effect of Defense Counsel's
#### Alleged Deficient Representation

As shown, *supra* at p. 3, the petitioner raised his cumulative-effect claim on appeal from the judgment of the post-conviction court.[3] The record shows, however, that the petitioner did not raise his cumulative-effect claim in either his petition or amended petition for post-conviction relief, as a factual predicate to his alibi-witness claim or otherwise. (Add. 20, pp. 2-9, 14-17) Neither did he raise the alleged cumulative effect of defense counsel's alleged deficient representation during the post-conviction evidentiary hearing (Add. 21, pp. 3-41).

The exhaustion requirement is satisfied when "state prisoners give state courts a *fair* opportunity to act on their claims." *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999)(italics in the

---

[3] The petitioner's claim on appeal lacked any supporting factual allegations, and made no reference whatsoever to alibi witnesses. (Add. 28, pp. 11-12) Moreover, the Court of Criminal Appeals did not address the issue. (Add. 28)

9

original). To satisfy the exhaustion requirement, the petitioner must present <u>every claim</u> raised in the federal petition to <u>each level</u> of the state courts. *Doctor v. Walters*, 96 F.3d 675, 678 (6th Cir. 1996)(citing *Picard v. Connor*, 404 U.S. 270 (1971) and *Anderson v. Harless*, 459 U.S. 5 (1982)). The petitioner did not raise this claim at every level of state review. Therefore, this claim is unexhausted.

For the reasons previously explained, *supra* at pp. 6-8, this claim is procedurally defaulted for purposes of federal *habeas corpus* review.[4] Moreover, because jurists of reason would not dispute this procedural ruling, a COA should not issue as to this claim.

### b. Failure to Prepare/Investigate

As shown, *supra* at p. 2, the petitioner raised his failure-to-prepare/investigate claim in his petition for post-conviction relief. Evidence also was adduced as to this claim at the post-conviction evidentiary hearing. (Add. 21, p. 9-118) However, as shown *supra* at p. 3, and as noted *supra* at p. 9 n. 3, the petitioner did not raise this issue on appeal from the judgment of the post-conviction court in the context of alibi witnesses or otherwise.

For the reasons previously explained, *supra* at pp. 6-8, this claim is procedurally defaulted for purposes of federal *habeas corpus* review. Once again, because jurists of reason would not dispute this procedural ruling, A COA should not issue as to this claim.

### B. Petitioner's Claim That His Conviction Was Obtained in Violation of His Right Against Self-incrimination

---

[4] It is worthy of note that, even if there were grounds for the district court to excuse procedural default on this claim, the claim itself lacks any factual supporting factual allegations, or any specific examples of ineffective assistance that would support the petitioner's cumulative-effect claim. Conclusory allegations, without supporting factual allegations or evidentiary support, do not provide a basis for *habeas corpus* relief. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001)(citing *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir.1991)(bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in federal *habeas corpus* proceedings). The less stringent standard for *pro se* plaintiffs does not compel the courts to conjure up unpled facts to support conclusory allegations. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990).

10

The petitioner's second claim – petitioner's Ground B – is that his statements to law enforcement were not voluntary, knowing, or intelligently made. (Docket Entry No. 1, Attach. Memo., pp. 11-19) The respondent argues that the state court's decision on this claim was neither contrary to clearly established law, nor did it represent an unreasonable application of federal law in light of the facts presented. (Docket Entry No. 15, pp. 11-14)

As an initial matter, the undersigned notes that the petitioner has made the following allegations in support of this claim: 1) "government officials removed [him] from his holding cell and began to interrogate [him]"; 2) law enforcement officials "asked the Petitioner if [he] was apart [*sic*] of the 9/11 campaign the World Trade Centers, the Pentagon as well as the attempted high jacking of an airline to crash into the Whitehouse [*sic*]"; 3) law enforcement officials subjected the petitioner to "emotional threats and psychological ploys"; 4) the petitioner was subject to "overwhelming" "coercion"; and 5) "the petitioner [tried] to resist th[e] pressure but was overcome by strong provocation . . . in the form of threats." (Docket Entry No. 1. Attach. Memo., p. 13) This claim was never raised in any state court in the context of forced interrogation, emotional duress, use of psychological ploys, coercion, pressure, provocation, or threats. (Add. 1, pp. 5-6; Add. 17, pp. 32-34) As such, these factual predicates comprise an entirely new claim. For reasons previously explained, *supra* at pp. 6-8, this aspect of the petitioner's claim is procedurally defaulted for purposes of *habeas corpus* relief.

The only claim that the petitioner exhausted in state courts is that he did not make a knowing and voluntary waiver of his rights because he did not speak/understand English, and that, taking advantage of the petitioner's alleged inability to speak/understand English, Smyrna detective Liehr seized the opportunity to falsify the petitioner's statement. (Add. 1, pp. 5-6; Add. 17, pp. 32-34; Add. 21, pp. 9-80) This is the only claim pertaining to the petitioner's statement that is properly

11

before the Court.

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Before a custodial interrogation, a suspect must be informed of his rights under the Fifth Amendment. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)("Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."). However, "[t]he defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently." *Id*. (emphasis added).

Whether a suspect's waiver of *Miranda* rights is "a knowing and intelligent relinquishment or abandonment of a known right or privilege" is "a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' " *Edwards v. Arizona*, 451 U.S. 477, 482 (1981)(quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A court must examine the "totality of the circumstances" to determine whether a suspect's waiver was knowing and intelligent, including inquiries into the suspect's "age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Fare v. Michael C.*, 442 U.S. 707, 725 (1979). "The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege," but does require "that a suspect know[ ] that he may choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time." *Colorado v. Spring*, 479 U.S. 564, 574 (1987); *see also Moran v. Burbine*, 475 U.S. 412, 421 (1986)("[T]he waiver must have been made with a full awareness of both the nature of the right

12

being abandoned and the consequences of the decision to abandon it.").

The Sixth Circuit has set forth the factors to be considered in determining whether a criminal defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights. *See Machacek v. Hofbauer*, 213 F.3d 947, 954 (6th Cir.2000). Those factors are:

> Fist, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances . . . .' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

*Id.* (citing *Moran*, 475 U.S. 421 and *Fare*, 442 U.S. at 725). The "totality of the circumstances" inquiry is that set forth under *Edwards* and *Johnson* cited *supra* at p. 12. *Id.*

The record shows that the petitioner filed a motion to suppress his statements to Smyrna detective John Liehr. (Add. 1, pp. 5-6) The relevant portions of that motion to suppress are as follows:

> Defendant . . . assert[s] that due to his problem with the English language he did not understand his right to remain silent, his right to counsel and other rights under the United States and Tennessee Constitutions, and any purported waiver of such rights was not knowingly and intelligently made.
>
> Further, defendant would aver that due to his problem with the English Language, he did not understand many of the items contained in the purported statements and that the contents thereof, which were written by the officer in this case, Detective John Liehr of the Smyrna Police Department, contain inaccurate and untrue items, and even contain items which were not said by the defendant.

13

(Add. 1, pp. 5-6)

The trial court held a suppression hearing on July 2, 2002 (Add. 2) at which the petitioner responded to questions through an interpreter. Detectives Liehr and Peach, as well as the petitioner, all testified at length at the hearing – the detectives testifying that they had no difficulty communicating in English with him, and he with them, and the petitioner arguing that he did not understand anything that was going on because he did not speak/understand English. The petitioner's age, experience, education, background, intelligence, ability to understand the warnings given, the nature of his rights, and the consequences of waiving those rights, were all addressed during the course of the hearing. The petitioner's veracity also was called into question by the State on several occasions, including: 1) the fact that he applied for, passed the written tests, and received a driver's license in both Tennessee and Florida; 2) conflicts in his testimony at the suppression hearing that he did not understand his rights or what was going on even though he had been previously arrested for, and pled guilty to, a domestic violence charge; 3) conflicts between his testimony at the suppression hearing that he came to the United States in 1994 and a sworn affidavit that he executed in the domestic violence case that he came to the United States in 1991; and 4) evidence that he claimed to have come to the United States in 1991 as a means to withdraw his guilty plea in that case to avoid deportation. (Add. 2, pp. 111-133)

The trial court denied the motion to suppress on July 12, 2002. (Add. 1, p. 12) Although the Order is somewhat vague, given that the motion was filed based on the petitioner's alleged "problem with the English language," it may be inferred that the trial court determined the petitioner's English language skills did not cause him to make an unknowing and unintelligent waiver of his rights. It also is clear from the record that the trial court denied the petitioner's motion to suppress having considered the "totality of the circumstances" as defined by *Edwards* and *Johnson*, *supra* at p. 12.

14

The trial court granted the petitioner permission to file an interlocutory appeal on the issue, but the petitioner elected not to do so. (Add. 2, pp. 154-155)

At trial, considerable evidence was adduced regarding the petitioner's English language skills. Detective Liehr repeated his testimony from the suppression hearing that he and detective Peach had no difficulty communicating with the petitioner in English, and that the petitioner had no problem communicating with them in English. (Add. 7, pp. 280-310) The victim testified that she knew no Arabic, and that the petitioner always spoke to her in English. (Add. 6, pp. 210-212) Debra Kann, the victim's grandmother, who had known the petitioner for five years, testified that she too knew no Arabic, that the petitioner "always" communicated in English, and that "his English was very good." (Add. 6, pp. 228, 232) Finally, the petitioner's common-law wife, Lisa Lantz, testified that the petitioner always spoke in English to her, their children, her children from a previous marriage, and to her mother, that he obtained Tennessee and Florida driver's licenses on his own, that he completed applications and participated in job interviews on his own, and that he never had problems in getting a job because of an inability to speak English. (Add. 8, pp. 373, 383-386)

As previously noted, *supra* at p. 1, the petitioner raised this claim on direct appeal. The petitioner's argument on appeal was, once again, that he did not knowingly, voluntarily, and intelligently waive his rights because of his alleged inability to speak/understand English, and that because of those alleged problems, detective Liehr took advantage of the situation and falsified his statement. (Add. 17, pp. 32-34)

Although the Court of Criminal Appeals determined that "[t]he evidence does not preponderate against the trial court's determination that the Defendant waived his Miranda rights knowingly and intelligently"(Add. 19, p. 5), it did not identify, nor did it analyze this issue under, established federal law governing the petitioner's Fifth Amendment claim. Instead, the Court of

15

Criminal Appeals addressed the issue solely under state law governing allegations of trial court error, the standard being that it was required to "uphold[] the trial court's findings of fact unless the evidence preponderates otherwise." (Add. 19, p. 4)

Notwithstanding that the Court of Criminal Appeals did not analyze this issue under the specific federal standard applicable to this issue, the record nevertheless supports the conclusion that the Court of Criminal Appeals made its determination having considered the totality of the circumstances, which is the standard. (Add. 19, pp. 1-5) A review of the record shows that the Court of Criminal Appeals recounted the relevant facts correctly, and its ruling affirming the trial court's determination that the petitioner made a knowing and intelligent waiver of his rights, was entirely consistent with those facts. As previously noted, *supra* at p. 5, the Court of Criminal Appeals' factual determination is entitled to the presumption of correctness unless the petitioner rebuts that presumption by clear and convincing evidence, which he has not. Moreover, in affirming the judgment of the trial court, the Court of Criminal Appeals's determination ultimately was neither contrary to, nor involved an unreasonable application of the federal "totality of the circumstances" standard.

Assuming for the sake of argument that the foregoing analysis of the Court of Criminal Appeals' determination were deemed invalid, the Court may reach this issue *sua sponte* under Rule 8, Rules – Section 2254 Cases. In that event, it suffices to note that the ground for relief before the Court turns on one consideration: the petitioner's alleged inability to speak/understand English. Specifically, the petitioner asserts that his waiver was invalid, and that detective Liehr was able to falsify his statement, because the petitioner was unable to speak/understand English. Remove the language-skill issue, and there is no claim. As previously established, *supra* at pp. 15-16, the record shows that the petitioner's language-argument was discredited at trial. Because the record shows that

16

the petitioner speaks/understands English, the two-part claim before the Court must fail.

For the reasons explained herein, the plaintiff's claim that his conviction was obtained in violation of his rights under the Fifth Amendment is without merit.

### Certificate of Appealability

When a ground for relief is denied on the merits in a *habeas corpus* action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. The petitioner has not made a substantial showing of a denial of a constitutional right with respect to this claim. Therefore, a COA should not issue on this claim.

### III. CONCLUSION

For the reasons explained above, the undersigned **RECOMMENDS** that the respondent's motion to dismiss (Docket Entry No. 14) be **GRANTED**, that the petition (Docket Entry No. 1) be **DENIED**, that this action be **DISMISSED** with prejudice, and that any appeal **NOT** be certified under 28 U.S.C. § 1915(a)(3) as taken in good faith.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from service of this R&R within which to file with the district court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have ten (10) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within the time frames specified may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 12th day of May, 2008.

_____
Joe B. Brown
United States Magistrate Judge

18